IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | No. 22-cr-00375-CKK |
| | : | |
| **THOMAS CAREY,** | : | |
|     **Defendant.** | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Mr. Thomas Carey. There can be no dispute that the Court has a duty to deliver a sentence which are not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Carey requests that the Court impose a sentence of twelve (12) of months unsupervised probation coupled with community service hours, considering:

(1)     His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building;

(2)     His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

(3)     To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

I.      **CASE BACKGROUND**

On September 12, 2022, a criminal complaint with a Statement of Facts [1] was filed in U.S. District Court for the District of Columbia charging Mr. Carey, with four (4) misdemeanor offenses related to his conduct on January 6, 2021.[1] On September 15, 2022, he was arrested in Pittsburgh, PA, and presented in the U.S. District Court for the Western District of Pennsylvania. He was released on a personal recognizance bond. On September 22, 2023 he was presented in this Court and he was released by U.S. Magistrate Judge G. Michael Harvey on a personal recognizance bond with standard conditions. [22]

On December 22, 2022, Mr. Carey appeared (VTC) before U.S. District Judge Collen Kollar-Kotelly, and the Court accepted a voluntary guilty plea as to Count Four of the Information: 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement, [52] Mr. Carey has agreed to $500.00 restitution and a $10.00 special assessment.

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

It is counsel's understanding that Mr. Carey is in compliance with all of his conditions of release.

The USPO Sentencing Recommendation [58] proposes a period of 36 months probation. And, the U.S. Government asks for a period of 60 days incarceration, 3 years of probation, and $500.00 in restitution. [59]

Sentencing is scheduled for April 26, 2023, at 1:30 p.m. (VTC)

## II.     LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;

(5)) any relevant "policy statements" promulgated by the Commission;
(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

### A.  Nature and Circumstances Of The Offense

Mr. Carey, is a college student (senior) at Carnegie Mellon University in Pittsburgh, PA. Together with Jon Lizak[2] he traveled on January 4, 2021, to Washington, D.C., to attend "Stop The Steal" Rallies." They met up with Paul Lovely and Gabriel Chase on evening of January 4th.  However, he did not meet Mr. Brody until the morning of January 6th. He and this small group (Messrs. Lizak, Brody, Lovely and Chase) entered the Capitol Building at approximately 2:16 p.m. through the Senate Wing Doors and proceeded towards the Crypt. Mr. Carey followed his friends, but he recalls Mr. Brody was at times separated from the group and he was going his own way without regard to Mr. Carey. In fact, Mr. Brody entered the Senate Chamber, but Mr. Carey did not follow him in there. Mr. Carey left the U.S. Capitol building at approximately 2:50 p.m.

All of this is confirmed by the Statement of Offense. [51]

After watching video clips of January 6th after-the-fact, he regrets that he was any part of it of the events. Mr. Carey did not join with the violent protesters who assaulted police officers and caused property damage to the U.S. Capitol.

Mr. Carey was not part of a group which either organized activities on January 6th, nor does he subscribe to any far-right political views. He had no idea

---

[2]  Related cases: Jon Lizak, (22-mj-203), Joseph Brody (22-mj-203), Paul E. Lovely (23-cr-19-CKK), and Gabriel Chase (23-cr-18-CKK).

where he was while he was in the Capitol building, and he was for the most part lead around by Mr. Brody. To this day he could not navigate the building.

The government concedes that Mr. Carey committed no violent acts and destroyed no property. His actions within the U.S. Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, commit violent acts, or encourage others to do so. Furthermore, Mr. Carey did not exercise managerial authority over any other participant (*See* PSR [57], ¶ 27) and, thus, he was average or minor participant whose conduct was not peripheral to the advancement of the offense. He merely went inside for approximately 34 minutes with his aforementioned small group of acquaintances.

### Post-January 6, 2021

To his credit, Mr. Carey has fully acknowledged his misconduct. He pled guilty at a pre-trial stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office. He has already been interviewed by law enforcement agents about his conduct surrounding the events of January 6th. During this interview he stated that prior to January 6th, he did not intend to enter the U.S. Capitol building but admitted he did so as the events of the day unfolded. He acknowledged he contributed to the chaos at the U.S. Capitol and the (unplanned) disruption of congressional activities that day. Mr. Carey was truthful and candid during this interview.

USPO Andre M. Wilson notes "During the pre-sentence interview, the defendant agreed with the conduct described in the Statement of Offense as

presented to the Court prior to his guilty plea." *See* PSR [57], ¶29.

Because of his involvement with January 6th events, Mr. Carey has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping him with others that were there at the U.S. Capitol on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched and it may well impact his career plans as he will soon graduate from college.

B.   **History and Personal Characteristics of Mr. Carey**

Mr. Carey (age 22) was born in Brooklyn, NY and he was raised in Cold Spring Harbor, NY. He reports he had a normal upbringing. He graduated from Cold Spring Harbor High School in 2018, where he was a member of the National Honor Society. He is currently enrolled full-time at Carnegie Mellon University in Pittsburgh, PA, and he will graduate in May, 2023, with a degree in computer science.

Although recently divorced, both his parents are alive and with both he has a close relationship. He has one brother who attends High Point University, and they are close. He is not married nor does he have any children.

Because he is a full-time college student, he works on a part-time basis in the computer programming field, including computer game(s) development. While a college student, he taught a credited course at Carnegie Mellon on game development for 3 semesters, 3 hours a week. He has been offered full-time employment with Amazon after he graduates.

Mr. Carey has a remarkable history of volunteer activities, as noted below. His prior (extensive) experience with community service should convince this Court that he is well-suited to comply with any community service hours ordered as part of the Court's sentence.

    A.    1 year of volunteer service at the Cold Spring Harbor Fire Department Fire and Rescue: (1) Rescue - assisted EMTs and ambulance operators with medical emergencies in the CSH area, (2) Fire - assisted in extinguishing a large barn fire.

    B.    5 years as a volunteer educator in programming and game development and We Connect The Dots - 100-200 hours per year.

    C.    Directly teaching programming to underprivileged high school students in New York City.

    D.    1 year of 1-on-1 tutoring with an autistic student.

    E.    100 hours of volunteering at St. Johns church in Cold Spring Harbor.

    F.    Soup kitchen volunteering.

    G.    Youth education programs.

The following persons have submitted letters in support of Mr. Carey:

1. Michael Carey – Father of Mr. Carey.

2. Ms. Saya Tousi – Friend of Mr. Carey.

3. Mr. Jacob Cohen – Staff member at Carnegie Mellon University.

4. Mr. Anam Javaid – Colleague of Mr. Carey.

5. Mr. P. Brooke Dixon, Jr. – Colleague of Mr. Carey.

These letters attest to his excellent reputation in his community, as to his excellent character, his being a respected student and colleague, and as a devoted family member.

Mr. Carey has no criminal history.

Also, as noted herein and in the PSR, the United States Sentencing Guidelines do not apply in this case as his conviction is a Class B Misdemeanor.

All of the above personal factors, as well as his law abiding life and his post arrest behavior, demonstrate he is capable of being a productive citizen, which the Court can rely on as a basis to sentence him to a short term of unsupervised probation when it considers the §3553 factors.

### C. General Deterrence – 18 U.S.C. § 3553(a)(2)(B) – To Adequately Deter Others From Criminal Conduct

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of

Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

### D. Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) – To Protect the Public From Further Crimes Of The Defendant

Mr. Carey's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id*.; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id.* at 1. It examined the effects of changes to both the

certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. Given Mr. Carey age (22), and other issues consistent with what is mentioned above, the likelihood of Mr. Carey ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter him.

### IV.     The Need To Avoid Unwarranted Sentence Disparities

Mr. Carey urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. Compared to many other misdemeanor cases which have been filed in this Court, Mr. Carey's conduct is among the most peaceful and non-threatening.

As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with any extremist or organized group. Mr. Carey did not incite others to commit acts of violence or

destruction. He did not engage in any violence or questionable conduct towards law enforcement. He did not destroy property within the U.S. Capitol building. And the defense is not aware of any evidence suggesting that Mr. Carey entered into the Senate or House Chambers.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling of January 6th U.S. Capitol breach cases, where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, the Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cell-phone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, the Court imposed 12 months probation. Mr. Lewis was inside the Capitol Building for approximately 7 minutes.)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, the Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, the Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted.)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment, however the Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes.)

- *United States v. Gary Edwards,* 21-cr-00366-JEB (Government requested 14 days imprisonment however this Court imposed 12 months probation. Mr. Edwards was inside the Capitol building for approximately 24 minutes.)

- *United States v. Douglas F. Macrae,* 22-cr-00181-JEB (Government requested 4 months home detention however, this Court imposed 12 months probation. Mr. Macrae was in the Capital building for approximately 3 minutes and he posted comments on social media.)

- *United States v. Caleb Jones,* 21-cr-00321-JEB (Government requested 36 months probation with 3 months of home detention however, this Court imposed 24 months probation with 2 months home confinement. Mr. Jones was inside the Capitol building for a short period of time)

- *United States v. Bryan Bustos,* 22-16-CJN (Mr. Bustos was inside the Capitol Building for approximately 11 minutes. Government requested 14 days incarceration, the Court impose 24 months of probation.)

- *United States v. Tyrone McFadden, Jr.,* 21-248-RDM (Mr. McFadden was inside the Capitol Building for a short period of time, and merely walked around. Government requested 90 days home detention and 60 hours of community service. The Court impose 24 months of probation.)

None of this is to suggest that any of these examples, for a conviction of 40

U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home

detention, but only to suggest there is nothing materially different about Mr. Carey or his conduct which would justify a sentence of incarceration / home detention. Judges of this district court have sentenced many January 6th misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention or just a fine.

Mr. Carey was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Carey's conduct on January 6, 2021, as well as his personal characteristics.

## CONCLUSION

Mr. Carey respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months together with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and, (3) To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, he asks that the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a

period of incarceration warranted, Mr. Carey, asks that he be allowed to serve it on weekends, which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH). [3]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant (additional) fine. He will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Mr. Thomas Carey respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, together with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider Mr.Carey as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

---

[3] Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2023, I caused a copy of the foregoing Memorandum in Aid of Sentencing, with exhibits, submitted on behalf of Mr. Thomas Carey, to be served by CM/ECF to case registered parties.

_____
Allen H. Orenberg